[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 318.]

MANNION ET AL., APPELLANTS, *v*. SANDEL, APPELLEE.

[Cite as *Mannion v. Sandel*, 2001-Ohio-47.]

*Torts—Medical malpractice—Civil procedure—New trial—Civ.R. 59(A)— Standard of specificity that trial court must meet as that court articulates the reasons behind the determination that a new trial is warranted on the ground that the verdict is against the manifest weight of the evidence.*

(No. 00-903—Submitted February 7, 2001—Decided April 11, 2001.)

APPEAL from the Court of Appeals for Summit County, No. 19433.

_____

ALICE ROBIE RESNICK, J.

{¶ 1} This case involves a trial court's decision in a medical malpractice action to grant a motion for a new trial after the jury had rendered a verdict in favor of one of the parties. The particular issue that arises in the circumstances before us concerns the standard of specificity that the trial court must meet as that court articulates the reasons behind the determination that a new trial is warranted on the ground that the verdict is against the manifest weight of the evidence.

I

Facts and Procedural History

{¶ 2} This case is a medical malpractice action for damages brought by plaintiff-appellant Michelle L. Mannion and includes a loss-of-consortium claim of her husband, plaintiff-appellant Thomas Mannion. The defendant is appellee, Allan J. Sandel, M.D. Appellants' complaint against Sandel was filed on October 9, 1996, in the Summit County Court of Common Pleas. The case proceeded to jury trial on November 10, 1997.

{¶ 3} The testimony presented at trial established that Mrs. Mannion was diagnosed with breast fibroadenomas and benign tumors in 1988. On January 17,

1989, appellee performed a bilateral mastectomy and subcutaneously placed polyurethane-foam-covered breast implants. Subsequently, appellant experienced infection, pain, and drainage to the left breast, and the left nipple sloughed off, exposing the implant. Appellee performed a second surgery to remove appellant's infected left breast implant. On July 18, 1989, appellee again performed surgery to subcutaneously reinsert a new polyurethane-foam-covered left breast implant. Within a few months, appellant's left breast implant developed an open lesion, resulting in drainage, infection, and pain, and warranting emergency room visits. On September 20, 1990, appellant was admitted to the hospital and administered intravenous antibiotics, which were ineffective. Appellee again performed surgery to remove the implant.

{¶ 4} From 1990 to 1993, the wound on appellant's left breast failed to heal, resulting in pieces of polyurethane foam coming to the surface and emerging through the lesion. Appellee contended that there was no reason to remove the remaining polyurethane foam from the left breast implant, since it was working its way out on its own.

{¶ 5} Appellant continued to experience difficulties with the breast implant, and in August 1993, she went to see Zaheer Shah, M.D. Shah told her that both the right implant and the residual polyurethane foam on the left side needed to be removed immediately. The right breast implant and residual polyurethane foam from the left breast area were removed by Shah, leaving appellant with no implants and virtually no breast tissue.

{¶ 6} Appellants' expert witness, Dr. Philip Lipkin, testified that the standard of care required submuscular rather than subcutaneous implants for appellant. He further testified that this submuscular procedure had been in place since the early 1980's because of concern about compromised blood supply to the skin. Lipkin opined that appellee's decision to use subcutaneous placement rather than submuscular was not up to the standard of care in 1989. Moreover, Lipkin

testified as to the standard of care involved in removing a polyurethane-coated implant. He further testified that due to appellee's use of subcutaneous placement (as opposed to submuscular implantation), appellant suffered skin loss, infection, and implant exposure, which ultimately required total removal of the implants.

{¶ 7} Appellee's expert, Dr. Brian Windell, similarly testified that the standard of care that existed in 1989 would have required appellee to attempt to remove all of the polyurethane foam fragments during the removal of the infected implant.

{¶ 8} After the jury returned a verdict in favor of appellee, appellants filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court overruled the motion for judgment notwithstanding the verdict and granted the motion for a new trial under Civ.R. 59(A)(6), finding that the judgment was not sustained by the weight of the evidence. Appellee appealed the granting of the motion for a new trial to the Ninth District Court of Appeals, which, in a two-to-one decision, reversed the order of the trial court.

{¶ 9} This cause is now before this court pursuant to the allowance of a discretionary appeal.

II

Specificity Pursuant to Civ.R. 59(A)

{¶ 10} Civ.R. 59(A) provides:

"A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

" * * *

"(6) The judgment is not sustained by the weight of the evidence * * *."

{¶ 11} Civ.R. 59(A) goes on to provide that "[w]hen a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted."

{¶ 12} The order granting the new trial at issue in this case provided:

"The Court has reviewed the testimony of the experts who appeared at the trial of this matter. The Plaintiff[s'] and Defendant's experts testified that certain of the Defendant's conduct violated the standard of care. Both doctors testified that by failing to remove the polyurethane foam coating of Plaintiff's left breast implant upon removal of the implant, the Defendant violated the standard of care as it existed at the time.

"Therefore, there is evidence that, on at least one of Plaintiff[s'] claims regarding the negligent removal of Plaintiff's left implant, the jury should have found that the Defendant did not meet the standard of care. In order to correct a manifest injustice, the Plaintiff[s'] Motion for a New Trial is granted."

{¶ 13} The issue before this court is whether the order of the trial court in granting the motion for a new trial complied with Civ.R. 59(A) as the rule was interpreted by this court in *Antal v. Olde Worlde Products, Inc.* (1984), 9 Ohio St.3d 144, 9 OBR 392, 459 N.E.2d 223.

{¶ 14} In assessing the propriety of the trial court's compliance, we are guided by *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus:

"Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court."

{¶ 15} In *Antal*, 9 Ohio St.3d at 147, 9 OBR at 395, 459 N.E.2d at 226-227, the court stated:

"The question remains as to how specific must a trial court be when granting a new trial on the ground that the verdict is against the manifest weight of the evidence. The record of the case at bar reveals that the trial court articulated no reasons whatsoever, other than stating generally that the jury's verdict was not 'sustained by the weight of the evidence.' While the determination of whether a trial court's statement of reasons is sufficient should be left to a case-by-case

analysis, we can say with a reasonable degree of certainty that such reasons will be deemed insufficient if simply couched in the form of conclusions or statements of ultimate fact. [Citation omitted.]

"Consequently, we hold that, when granting a motion for a new trial based on the contention that the verdict is not sustained by the weight of the evidence, the trial court must articulate the reasons for so doing in order to allow a reviewing court to determine whether the trial court abused its discretion in ordering a new trial." See *id*. at syllabus.

{¶ 16} In its entry the trial court stated that both experts "testified that by failing to remove the polyurethane foam coating of Plaintiff's left breast implant upon removal of the implant, the Defendant violated the standard of care as it existed at the time." The foregoing language of the trial court cannot be construed as being "simply couched in the form of conclusions or statements of ultimate fact," as was found inadequate in *Antal*. There can be no hard-and-fast rule set forth by this court as to sufficiency of the grounds specified by a trial court in support of the determination that a new trial is warranted. We adhere to the necessity of case-by-case determinations as set forth in *Antal*.

{¶ 17} The majority of the court of appeals stated in the opinion below that it was appropriate to apply a more stringent standard when dealing with the setting aside of a jury verdict as against the weight of the evidence than for other new trial orders under Civ.R. 59(A). However, courts of appeals are required to follow the law as it is interpreted by this court. We decline to extend the rule of *Antal* to require a more stringent standard of specificity in setting forth reasons for granting a new trial in a situation such as the case *sub judice*.

{¶ 18} The trial court decision to grant a new trial in this case is subject to the same abuse-of-discretion standard discussed in *Antal*. "[A] reviewing court should view the evidence favorably to the trial court's action rather than to the jury's verdict. The predicate for that rule springs, in part, from the principle that

the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice." *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198, 202, 423 N.E.2d 856, 860.

{¶ 19} It is not the place of this court to weigh the evidence in these cases. In reviewing the order of the trial court, we first find that sufficiently detailed reasoning was specified in writing to allow an appellate court to conduct a meaningful review to determine whether the trial court abused its discretion in ordering a new trial.

{¶ 20} Furthermore, after a thorough review of the record, we find that there has been no showing that the trial court's order was unreasonable, arbitrary, or unconscionable. See *Rohde*, 23 Ohio St.2d at 87, 52 O.O.2d at 378-379, 262 N.E.2d at 689; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, paragraph two of the syllabus. Therefore, we find no abuse of discretion.

III

Conclusion

{¶ 21} The trial court's order articulated reasons for granting a new trial sufficient for appellate review in accordance with the requirements of Civ.R. 59(A) and of *Antal*. In addition, the trial court's order did not constitute an abuse of discretion. We reverse the judgment of the court of appeals and remand this cause to the trial court for a new trial on all counts.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Chattman, Gaines & Stern, John V. Scharon, Jr., Dale A. Nowak* and *Michael B. Michelson*, for appellants.

*Gallagher, Sharp, Fulton & Norman, Lynn L. Moore* and *Marie L. Perella; Edminster & Associates* and *Michael E. Edminster*, for appellee.

_____