OPINION
Plaintiff-appellant, Rex B. Rumley, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion of defendant-appellee, CESCO, Inc. ("CESCO"), for a new trial following a jury verdict in plaintiff's favor. In addition to granting CESCO's motion for new trial, the trial court at the same time denied CESCO's motion for judgment notwithstanding the verdict ("JNOV"), and CESCO has filed a cross-appeal challenging denial of the JNOV.
In 1994, plaintiff sustained a work-related injury while employed by CESCO. He did not work for some months and eventually filed a workers' compensation claim. Thereafter, plaintiff inquired about his continued employment and received a letter stating that his employment previously had been terminated. While the parties dispute the facts surrounding the termination of plaintiff's employment, at some point plaintiff was informed or came to believe that he had been discharged by CESCO. In January 1998, plaintiff filed a complaint against CESCO, including a tort claim for wrongful discharge and a statutory claim for retaliatory discharge in violation of R.C. 4123.90.
In March 2000, the action was tried before and submitted to a jury. The court, however, did not submit to the jury the interrogatories CESCO requested. The jury returned a verdict for plaintiff, awarding damages and attorney fees.
On June 2, 2000, CESCO filed a motion for JNOV or, in the alternative, for a new trial. While the motion for JNOV asserted deficiencies in plaintiff's evidence, CESCO's motion for a new trial was premised on the court's failure to submit CESCO's requested jury interrogatories. The trial court filed a judgment entry on September 27, 2000, which states in its entirely, as follows:
 DEFENDANT, CESCO. INC. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT DENIED. DEFENDANTS MOTION FOR NEW TRIAL SUSTAINED. FURTHER HEARING ON THE MOTION FOR ATTY. FEES IS MOOT. [sic]
Plaintiff appeals, assigning the following error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ORDERING A NEW TRIAL.
CESCO cross-appeals, assigning two errors:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO GRANT DEFENDANT/CROSS APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND ITS MOTIONS FOR A DIRECTED VERDICT ON THE GROUNDS THAT PLAINTIFF/APPELLANT FAILED TO PROVE HE WAS DISCHARGED, AND IF CONSTRUCTIVELY TERMINATED, BY CROSS APPELLANT HIRING ANOTHER EMPLOYEE, WAS IT BECAUSE THE PLAINTIFF FILED A CLAIM UNDER THE WORKERS' COMPENSATION ACT.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO GRANT DEFENDANT/CROSS APPELLANT'S MOTION TO DISMISS COUNT II OF THE COMPLAINT ON THE GROUNDS THE COURT LACKED SUBJECT MATTER JURISDICTION DUE TO PLAINTIFF/ APPELLANT'S FAILURE TO PROVE THAT THE EMPLOYER RECEIVED WRITTEN NOTICE OF THE CLAIMED VIOLATION, AS REQUIRED BY OHIO REVISED CODE § 4123.90, WITHIN NINETY DAYS IMMEDIATELY FOLLOWING THE ALLEGED DISCHARGE.
As a preliminary matter, however, we address the threshold question of our jurisdiction to review the judgment entry from which both parties have appealed.
The parties agree that the trial court's order granting a new trial is final and appealable, even though granted before the trial court entered judgment on the jury's verdict. See R.C. 2505.02; Colvin v. Abbey's Restaurant, Inc. (1999), 85 Ohio St.3d 535, 539. Thus, the trial court's judgment entry of September 27, 2000, was, at least in part, a final appealable order.
Plaintiff contends, however, that the denial of CESCO's JNOV motion is not a final appealable order and, as a consequence, this court does not have jurisdiction to consider the cross-appeal raising the issues related to that motion.
Civ.R. 50(B) provides that a motion for JNOV may be filed "* * * not later than fourteen days after entry of judgment * * * [and a] motion for a new trial may be joined with this motion * * *." Civ.R. 59(B) provides that "[a] motion for a new trial shall be served not later than fourteen days after the entry of judgment." Neither Civ.R. 50(B) nor 59(B) expressly precludes the filing of a Civ.R. 50 motion or a Civ.R. 59 motion before a trial court enters a judgment; Civ.R. 50(B) and 59(B) require only that the motions be filed no later than fourteen days after entry of judgment. Indeed, Civ.R. 50(B) pertains to a "motion for judgment notwithstanding the verdict," and not a "motion for judgment notwithstanding the judgment." Such language suggests that a journalized judgment entry of the verdict is not a prerequisite for a JNOV motion. Based, then, on the plain language of the two civil rules, a party may file either a JNOV motion or a motion for a new trial before a judgment is entered.
Here, on June 5, 2000, before the trial court had filed a final judgment entry, CESCO filed its JNOV motion and, alternatively, its motion for a new trial. Because CESCO's motions were filed no later than fourteen days after the entry of judgment, the motions were properly and timely filed pursuant to Civ.R. 50 and 59, despite the lack of a judgment on the verdict.
Plaintiff, however, contends the trial court's denial of CESCO's JNOV motion is not a final and appealable order. According to R.C. 2505.02, only final orders may be reviewed. Under R.C. 2505.02(B)(3), an order that grants a new trial is a final appealable order. Colvin, supra, at 538. R.C. 2505.02, however, does not address whether denial of a JNOV motion is a final order, and therefore appealable.
In case law pre-dating the civil rules, the Ohio Supreme Court noted:
 After an adverse verdict of a jury and before entry of judgment thereon, defendant may file a motion for judgment non obstante veredicto. If that is granted plaintiff may appeal from the granting, and if it is overruled defendant may appeal from the overruling. Hurt v. Charles J. Rogers Transp. Co. (1953), 160 Ohio St. 70, 73.
Later, in 1962, the Ohio Supreme Court determined:
 Where, at the conclusion of a trial, a motion for judgment notwithstanding the verdict and a motion for new trial under Section 2323.181, Revised Code, are made, the ruling upon each motion is appealable, but there is one appeal in the cause itself, and errors predicated on each ruling must bepresented in the same appeal. (Jolley v. Martin Brothers BoxCo., 158 Ohio St. 416, 109 N.E.2d 652, overruled.) Andersonv. Richards (1962), 173 Ohio St. 50, paragraph two of thesyllabus.
Taken together, these two cases suggest that (1) a party may appeal a JNOV motion that is overruled after an adverse verdict by a jury and before an entry of judgment, and (2) errors predicated on a JNOV motion and a motion for a new trial should be presented in the same appeal. Applied here, those cases suggest CESCO would be permitted to appeal the denial of its JNOV motion in conjunction with the appeal of the trial court's ruling on the motion for new trial.
Cases post-dating adoption of the civil rules are less direct in addressing the appealability issues raised here under R.C. 2505.02. The Ohio Supreme Court's analysis in State ex rel. A D Ltd. Partnership v. Keefe (1996), 77 Ohio St.3d 50, however, provides guidance. In that case, a jury returned a verdict in favor of the defendants. The trial court granted the plaintiff's motion for judgment notwithstanding the verdict on a negligence claim and ordered a hearing to determine compensatory damages for four class representatives. Defendants appealed, and also advised the trial court that they did not intend to appear at the hearing to determine compensatory damages because they believed their appeal divested the trial court of further jurisdiction. Defendants subsequently filed a complaint for a writ of prohibition with the appellate court to prevent the trial court from conducting the hearing or issuing any decision on the issue of damages. A writ of prohibition was issued, and the trial judge appealed to the Ohio Supreme Court.
In his first proposition of law, the trial judge argued that his entry granting a JNOV was not a final order under R.C. 2505.02 "because (1) it merely determined liability and not damages, and (2) he has not completed the task of setting aside the judgment based on the jury verdict until he enters a judgment on the damages issue." Keefe, at 53. In overruling the trial court's proposition of law, the Ohio Supreme Court noted:
 In essence, Judge Keefe claims that the appeal * * * in the underlying action is premature, since he will not have "disposed" of the plaintiffs' Civ.R. 50(B) motion for judgment notwithstanding the verdict until he rules on the issue of damages.
 However, as previously noted, Judge Keefegranted the Civ.R. 50(B) motion and, contrary to the languagein his entry, effectively ordered a new trial on damages. TheDecember 6, 1995 entry thereby disposed of the plaintiffs'motions for purposes of App.R. 4(B)(2) and Civ.R. 50(B).Based on the foregoing, the court of appeals correctly ruledthat Judge Keefe's December 6 entry constituted a final order under R.C. 2505.02. Id. at 55-56.
In reaching its decision, the Supreme Court relied on Hurt, noting in particular the language from the first paragraph of the syllabus that "[t]he journalized judgment of a ruling of a trial court on a * * * motion for a judgment notwithstanding the verdict constitutes a final order from which an appeal may be taken." Here, a single judgment entry simultaneously granted both a new trial and denied JNOV. Not only does the Supreme Court's citing Hurt with approval in Keefe suggest the denial of the JNOV is an appealable order, but the order regarding the new trial is acknowledged by the parties to be final and appealable.
Even if the trial court's single judgment entry is viewed as one that primarily denies JNOV, it still incorporates the granting of a new trial into the JNOV denial, and we are left with a single entry that grants a new trial. Not only are such orders final and appealable under R.C.2505.02, but allowing appeal of the entire entry is consistent with the Ohio Supreme Court's views in Hurt and Anderson and with notions of judicial economy. Accordingly, in this case the denial of the JNOV motion may be reviewed in the appeal of the trial court's single judgment entry simultaneously granting a new trial.
We recognize that language in Colvin at first blush may suggest a different result. In Colvin, the Ohio Supreme Court noted:
 Because the trial court never entered a final judgment on the jury's verdict (or on the interrogatory answers) before ordering a new trial pursuant to Civ.R. 49(B), there is no final judgment to support an appeal of any issue other than whether the trial court abused its discretion in ordering thenew trial. * * *
 Other rulings of the trial court besides the order for a new trial, as well as any other claimed errors occurring during the course of the trial, are interlocutory orders and may not be challenged at the time of the appeal from the new-trial order. For example, in this case the trial court's denials of the twodirected verdict motions were not final appealable ordersin their own right at the times of the denials. See R.C.2505.02. In these circumstances, those denials do notbecome reviewable upon the trial court's order of a newtrial pursuant to Civ.R. 49(B). Id. at 539-540.
The court in Colvin, however, noted that "[its] consideration of the court of appeals' jurisdiction is uniquely dependent on the concerns underlying the application of Civ.R. 49(B) and is independent of any implications that would have been raised had Civ.R. 59 instead been utilized." Id. at 539. Moreover, the holding of Colvin is limited to specific factors that are not present in this case. In Colvin, the court noted the following:
 In light of the foregoing specific considerations, we hold that pursuant to Civ.R. 49(B) and R.C. 2505.02, when a trial court sua sponte orders a new trial because a jury's answers to interrogatories are inconsistent with the jury's general verdict, the reviewing court of appeals has jurisdiction to consider onlythe propriety of the trial court's new-trial order. No otherclaimed errors are reviewable at that time. Id. at 540.
Here, the trial court did not grant a new trial pursuant to Civ.R. 49(B) and it did not sua sponte order a new trial. Accordingly, the holding of Colvin is inapposite to the facts and procedural history of this case.
Given the foregoing, this court has jurisdiction to consider both determinations in the single judgment entry that ordered a new trial and denied a motion for JNOV. Accordingly, we overrule plaintiff's motion to dismiss defendant's cross-appeal and address plaintiff's single assignment of error that asserts the trial court erred in granting a new trial without specifying its reasons.
Civ.R. 59(A) mandates that "[w]hen a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted." In addition, Civ.R. 59(D) provides that the court may grant a new trial "for a reason not stated in the party's motion" but must "specify the grounds for new trial in the order." See, also, Civ.R. 49(B) (providing that a new trial may be granted when the jury's general verdict is inconsistent with its answers to interrogatories).
When the trial court fails to identify any grounds for granting new trial, not even stating the rule under which new trial was granted, the appellate court may reverse and remand for the trial court to issue an order that complies with the applicable rule. See, generally, Mannion v. Sandel (2001), 91 Ohio St.3d 318. In Mannion, the Supreme Court upheld an order granting new trial because the trial court provided "sufficiently detailed reasoning" that would "allow an appellate court to conduct a meaningful review to determine whether the trial court abused its discretion in ordering a new trial." Id. at 322. The matter was remanded to proceed with a new trial because the trial court "articulated reasons for granting a new trial sufficient for appellate review" and those reasons were within the court's discretion. Id. at 322-323. By contrast, in the present appeal, the subject order states no reason for granting new trial, much less a sufficiently detailed reason. The judgment entry does not comply with the civil rules and is insufficient for appellate review.
CESCO nonetheless notes R.C. 2505.02 provides the trial court shall state the grounds for granting a new trial "upon the request of either party." CESCO argues that because neither party requested a statement of the grounds, the trial court had no obligation to provide them, regardless of the mandatory language in Civ.R. 59. Contrary to CESCO's contentions, if R.C. 2505.02 conflicts with Civ.R. 59 or 49, the rule prevails pursuant to the Modern Courts Amendment, as the matter is procedural in nature. See Boyer v. Boyer (1976), 46 Ohio St.2d 83, certiorari denied 429 U.S. 889; State v. Slatter (1981), 66 Ohio St.2d 452. Because the trial court failed to state any reason for granting a new trial, plaintiff's single assignment of error is sustained.
CESCO's first assignment of error on cross-appeal asserts the trial court erred in denying CESCO's motion for JNOV because plaintiff failed to prove that he was terminated from employment at CESCO, or that any discharge was as a result of plaintiff's filing a claim under the Workers' Compensation Act.
Plaintiff brought his statutory claim for retaliatory discharge pursuant to R.C. 4123.90, which provides in relevant part:
 No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.
As an employee claiming retaliatory discharge, plaintiff must show (1) he was injured on the job, (2) he filed a claim for workers' compensation, and (3) he was discharged by his employer in contravention of R.C. 4123.90. Here, the record includes a diverse array of evidence subject to reasonable interpretation. More specifically, CESCO presented abundant evidence, if accepted by the jury, establishing it did not terminate plaintiff's employment in retaliation for plaintiff's exercise of his statutory right to workers' compensation benefits. For example, according to CESCO's evidence, plaintiff was expected to report on his medical progress; plaintiff, however, failed to keep CESCO informed, and then failed to return to work when expected. Indeed, according to CESCO's evidence, it never discharged plaintiff; plaintiff simply never returned to work. Urgently needing to have plaintiff's duties performed as its busy season got underway, CESCO was forced to hire a replacement.
On the other hand, plaintiff presented evidence that reasonably could be interpreted to show that CESCO terminated plaintiff's employment in retaliation for filing a workers' compensation claim. For example, plaintiff presented evidence that when he sustained the industrial injury, CESCO urged him to refrain from filing a workers' compensation claim. According to plaintiff, CESCO at first was sympathetic about the injury, telling plaintiff to take his time returning to work and not to worry. Plaintiff testified, however, that CESCO's president asked plaintiff for a favor: that plaintiff submit his medical expenses to his wife's insurer because CESCO had a "problem" with workers' compensation at that time. Other evidence suggested CESCO's problem with the Bureau of Workers' Compensation was its "noncomplying" employer status for not having properly paid its premiums.
According to plaintiff, he complied with CESCO's request that he be a "team player" and submit medical claims on his wife's insurance, but his wife's insurance paid only a portion of the medical costs, and money became tight. Plaintiff presented evidence that when he was at his doctor's office, a staff member called CESCO inquiring about submitting plaintiff's bills in a workers' compensation claim, and plaintiff heard CESCO's president screaming angrily about the possibility of a workers' compensation claim.
Plaintiff's evidence further showed plaintiff continued to delay filing a workers' compensation claim, but eventually filed due to financial necessity. According to plaintiff, he was unaware he had been discharged until a case manager at the Bureau of Workers' Compensation rehabilitation center repeated a conversation she had with CESCO's president, in which the president indicated plaintiff's employment had been terminated. When plaintiff received no written or oral notice of termination from the employer, he finally wrote a letter asking about his continued employment; plaintiff then received a letter that his employment had been terminated months before. While evidence indicated CESCO attributed the termination of plaintiff's employment to plaintiff's hypertension, weight, and dizziness, plaintiff testified that he had not been diagnosed with hypertension, had not complained of dizziness to the employer, and had been overweight when he was hired.
The evidence in the trial court was sufficiently disputed to preclude JNOV for CESCO. If believed, plaintiff's evidence showed he was terminated from employment shortly after his doctor's office called CESCO to inquire about getting plaintiff's bills paid through workers' compensation, a call that drew an angry response from CESCO's president about a workers' compensation claim. Moreover, CESCO's stated reasons for terminating plaintiff's employment are unsupported if plaintiff's testimony is believed.
Given the foregoing, the evidence was sufficient to submit the claims of retaliatory discharge and wrongful discharge to the jury. The trial court did not err in denying CESCO's motion for a JNOV in that respect.
CESCO's second assignment of error contends the evidence was insufficient to prove plaintiff gave timely notice of his claim under R.C. 4123.90.
The date plaintiff's termination of employment was a matter of considerable dispute. Some evidence suggested plaintiff learned of a telephone conversation between his employer and a case manager at the Bureau of Workers' Compensation that led him to believe his employment had or may have been terminated, prompting plaintiff to write a letter to CESCO to discover if his employment actually had been terminated. The evidence further reflected plaintiff sent that letter on June 15, 1995, and CESCO's representative sent a response on July 7, 1995, stating plaintiff's employment had been terminated. Within the statutory ninety days, on August 28, 1995, plaintiff's representative sent a notice asserting that plaintiff's employment had been terminated in violation of R.C. 4123.90. By contrast, other evidence indicated that although CESCO expected plaintiff to return to work, plaintiff failed to return at the expected time. According to CESCO's evidence, CESCO never fired plaintiff, but simply replaced him.
Given the array of evidence concerning the date CESCO allegedly decided to terminate plaintiff's employment, the date the termination was communicated to plaintiff, and the various interpretations that could reasonably be placed on the evidence, plaintiff presented sufficient evidence to allow a jury to find that CESCO terminated plaintiff's employment but did not inform plaintiff of the termination until plaintiff received the letter of July 1995, rendering plaintiff's August 1995 letter a timely notice of his claim of retaliatory discharge. Accordingly, the trial court did not err in denying CESCO's motion for a JNOV on the basis that plaintiff failed to give timely notice of the violation of R.C. 4123.90.
Having denied plaintiff's motion to dismiss CESCO's cross-appeal, having sustained plaintiff's single assignment of error, and having overruled CESCO's two assignments of error on cross-appeal, we reverse the judgment of the trial court and remand for further proceedings on CESCO's motion for new trial.
TYACK and KENNEDY, JJ., concur.