JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants Amerigas Propane, Inc. and James Conrad, Administrator, Bureau of Workers' Compensation, appeal from the decision of the trial court that granted plaintiff-appellee's[1] motion for new trial on the ground the jury defense verdict was against the manifest weight of the evidence. For the reasons that follow, we affirm.
 {¶ 2} Decedent David Reid died while at work for defendant Amerigas on December 12, 2000. Decedent was 56 years old and his job title at that time was bulk truck driver. The bulk truck driver job entailed filling propane tanks with a hose and was much less strenuous than his previous job as a cylinder driver. On December 12, 2000, decedent was filling in for an absent cylinder truck driver.
 {¶ 3} Cylinder drivers were required to deliver on average between 75 and 125 tanks of propane to customers on a daily route. Cylinder drivers also removed an equal number of empty tanks from the customer sites. A full propane tank weighs approximately 57 pounds and empty tanks weigh approximately 33 pounds each. Cylinder drivers work alone and manually carry the tanks, two at a time, off and on the trucks.
 {¶ 4} Prior to his death, decedent had picked up and delivered approximately 75 tanks that day. Decedent was found laying face up in the snow with blood coming from his head approximately 10-20 feet from his truck. Decedent was found behind the building of an Amerigas customer with two propane tanks on either side of him. He had struck his head on a tank.
 {¶ 5} The weather that day was recorded as 23° Fahrenheit with wind gusts of 28-30 knots.
 {¶ 6} The autopsy revealed that decedent had a 95% calcified blockage in his arteries. The Autopsy Protocol recorded the cause of death "as hypertensive and atherosclerotic cardiovascular disease [noting other condition] of blunt impact to head * * * ACCIDENT WHILE AT WORK." (Pltf's Ex. 8, emphasis in original).
 {¶ 7} Only one month prior, on November 20, 2000, decedent was given a "modified stress test" for work where he was able to increase his resting heart rate from 72 beats per minute to 120 beats per minute without experiencing any reported symptoms. Plaintiff's expert found this significant in reaching his conclusion that decedent's death was the direct and proximate result of cardiac causes due to lifting heavy objects (the propane tanks) in inclement weather. Plaintiff's expert explained that aerobic exercise, such as walking on a treadmill, differed greatly from anaerobic exercise, such as weight lifting, in terms of risk to a cardiac patient. More specifically, aerobic exercise is good for the patient while anaerobic exercise is "terrible."
 {¶ 8} Defendants' expert opined that there was nothing about the job that precipitated any additional problems to decedent and that he died because of poor blood flow through his coronary circulation. Defendants' expert did not think decedent's physical job demands were important in reaching his conclusion. On cross-examination, however, this expert admitted that he would take persons with 95% blockage off the cylinder truck driver job because there is an increased risk of various kinds of complications. Specifically, the expert stated "[decedent's] death was due to coronary artery disease, and whatever other environmental circumstances may have played any kind of a role, I think that's speculative." Later, he opined that "[t]o have two of the three vessels, including the most broadly distributed vessels, compromised to 95 percent is a setup for sudden death."
 {¶ 9} The jury returned a verdict in favor of the defendants. The trial court subsequently denied plaintiff's motion for judgment notwithstanding the verdict. However, the trial court, in a thorough analysis, granted plaintiff's motion for new trial finding the verdict was against the manifest weight of the evidence. Defendants raise two assignments of error for our review, which we address in reverse order.
 {¶ 10} "II. The trial court erred in denying defendants-appellants' motion for a directed verdict at the close of the plaintiff-appellee's case-in-chief due to the lack of competent evidence as to the proximate causation and due to the failure of the plaintiff-appellee to sustain the burden of proof."
 {¶ 11} In deciding whether to grant a motion for a directed verdict, the trial court does not weigh evidence or consider the credibility of the witnesses, but rather, reviews and considers the sufficiency of the evidence as a matter of law. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66; O'Day v. Webb
(1972), 29 Ohio St.2d 215. Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment. Howellv. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
 {¶ 12} Defendants argue there was a lack of competent evidence as to proximate causation. Yet, the testimony of plaintiff's expert was that decedent's death proximately resulted from and in the course and scope of his employment with Amerigas.
 {¶ 13} Defendants maintain that plaintiff's expert's opinion was not based on facts and knowledge of events sufficient to support his opinion. In essence, defendants argue that plaintiff's expert's opinion lacked the factual foundation required under Evid.R. 703 and 705. Defendants concede that "all of the objections by both parties were withdrawn prior to the presenting of the videotape testimony of [plaintiff's expert]." Because defendants did not pursue or preserve an objection at trial on this basis and did not move to strike the opinion, that objection was waived. See In re Stillman, 155 Ohio App.3d 333,2003-Ohio-6228, ¶ 64, citing State ex rel. Zollner v. Indus.Comm. (1993), 66 Ohio St.3d 276, 278. Accordingly, we find the plaintiff's expert opinion provides sufficient evidence to justify the court's denial of a directed verdict.
 {¶ 14} Assignment of Error II is overruled.
 {¶ 15} "I. The trial court erred and abused its judicial discretion in granting plaintiff-appellee's motion for a new trial under Rule 59(A)(6) of the Ohio Rules of Civil Procedure because the jury verdict was supported by competent, substantial and credible evidence."
 {¶ 16} Civ.R. 59(A) requires the trial court to specify in writing its reasons for granting a new trial. In this case, the trial court thoroughly set forth its reasons for granting plaintiff-appellee's motion for a new trial in a detailed ten-page opinion and order.
 {¶ 17} The law requires appellate courts to apply the abuse of discretion standard when reviewing a trial court's decision to grant a new trial. We are further directed to "view the evidence favorably to the trial court's action rather than to the jury's verdict. The predicate for that rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice." Jenkins v.Krieger (1981), 67 Ohio St.2d 314, 320.
 {¶ 18} "It is not the place of [a reviewing] court to weigh the evidence in these cases." Mannion v. Sandel (2001),91 Ohio St.3d 318, 322. The trial court's order may not be reversed absent an abuse of discretion, i.e., that the order was "unreasonable, arbitrary, or unconscionable." Id., citing Rohde[v. Farmer (1970)], 23 Ohio St.2d at 87, and Steiner v. Custer
(1940), 137 Ohio St. 448, paragraph two of the syllabus.
 {¶ 19} The trial court fairly summarized the record evidence and the law applicable to a motion for new trial. The trial court found significant that defendants' expert conceded decedent should not have been performing any work given his condition. The trial court elaborated on the expert's resistance to drawing any probable connection between the nature of the work decedent was doing and his death. Still, the trial court found implicit in his testimony that the nature of decedent's work that day would exacerbate his condition and reasonably and strongly supported a conclusion that exertion would lead to heart failure. The trial court perceived that this conclusion was "greatly obfuscated by the manner in which [the expert] begrudgingly made piecemeal concessions during cross-examination."
 {¶ 20} The trial court then reasoned that the competing conclusion of plaintiff's expert was more plausibly supported by the evidence. Namely, that decedent "was engaged in work activity and that this fact contributed to his death." Decedent was found on the ground next to some propane tanks upon which he evidently struck his head. Additionally, the trial court noted defendants' expert had based his opinion on the slimmest factual basis and the lack of eyewitnesses to decedent's demise.
 {¶ 21} Ultimately, the court concluded that the jury failed to properly analyze defendants' expert opinion, which in reality supported two positions, one of which was entirely consistent with plaintiff's theory of the evidence. The trial court concluded that the jury's verdict was against the manifest weight of the evidence.
 {¶ 22} It is clear that the trial court engaged in an objective examination of the actual testimony and did not inappropriately substitute its judgment for that of the jurors. Instead, the trial court reasonably surmised that the jury missed the nuances of defendants' expert's testimony that supported plaintiff's theory of the case.
 {¶ 23} Our review of the record lends evidentiary support to the trial court's rationale and leaves us unpersuaded by defendants' claims that the trial court abused its discretion by granting plaintiff's motion for a new trial.
 {¶ 24} Assignment of Error I is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and McMonagle, J., concur.
[1] Debra L. Reid, Widow of David G. Reid, Deceased ("Reid").