DECISION AND JUDGMENT ENTRY
{¶ 1} Albert E. Cydrus and Mary I. Cydrus ("the Landowners") appeal the Ross County Court of Common Pleas' decision granting a new trial to the Director of the Ohio Department of Transportation ("ODOT") in ODOT's appropriation action. The Landowners contend that the trial court abused its discretion in granting a new trial because the jury's assessment of compensation due from ODOT was within the range supported by the evidence adduced at trial. Because we find that the evidence adduced at trial supports a fair market value of more than $352,000, we agree. Accordingly, we reverse the judgment of the trial court.
 I. {¶ 2} The Landowners purchased a 62.67 acre tract of land in Ross County, Ohio, in 1998 for $160,000, or approximately $2,553 per acre, for the express purpose of mining sand and gravel. At first, Landowner Albert E. Cydrus ("Cydrus") believed that the land could be mined to a depth of 35 feet and that the fair market value for the land was $10,000 per acre. He began selling sand and gravel to various purchasers for the price of one dollar per ton.
 {¶ 3} In 2001, ODOT appropriated a portion of the Landowners' property for its State Route 35 expansion project. ODOT took 13.81 acres for the highway, which cuts diagonally across the property, and left a 12.798 acre landlocked residue to the northeast and a 36.062 acre residue to the southwest. Of the 36.062 acre residue, the Landowners lost an additional 10 acres for mining due to setback requirements related to the highway project. ODOT filed a petition to fix the amount of compensation due for the Landowners' property in the trial court.
 {¶ 4} The evidence at trial revealed that the Landowners entered into a mineral lease with Olen Corporation for the 36.062 acre residue in 2002. Olen entered into the lease in order to supply the aggregate material for the highway project. Olen never considered leasing the 12.798 acre landlocked residue or the 13.81 acre appropriated area, as these areas simply were unavailable due to the highway project.
 {¶ 5} Olen performed tests and discovered that it could mine the sand and gravel on the leased property to a depth of 110 feet. Cydrus testified that, given his new knowledge that the gravel mines on his property are 110 feet deep, he believed that the property is worth "a lot more" than $10,000 per acre. He stated that the property would be a "steal" at $10,000 per acre. Cydrus further testified without objection from ODOT that, under the terms of his lease with Olen, he will earn $42,000 per acre if Olen mines the leased area to its full depth. Olen's president, Kenneth Holland, testified that his company historically operates its mining plants until a leased property's mines are exhausted.
 {¶ 6} Cydrus testified that the 12.798 acres that ODOT left landlocked now is worth only $1,000 per acre. He further opined that the 10 acres now unavailable for mining due to setback regulations are not worth anything.
 {¶ 7} On cross-examination, ODOT asked Cydrus whether he was aware of any other property sales in the area where the property sold for $10,000 per acre. Cydrus replied that the lots directly across the railroad track from his property were currently selling for $20,000 per acre. ODOT attempted to elicit testimony from Cydrus that the $20,000 per acre property is not comparable to his property, but Cydrus disagreed. Instead, Cydrus explicitly testified that the $20,000 per acre property was not different from his.
 {¶ 8} Leroy Walls, a mining industry consultant and retired employee of Olen, testified that the depth of the sand and gravel deposits on the property is relatively uniform across the property at 110 feet. Uwe K. Seeler, an expert consultant for sand and gravel mining companies, testified that the sand and gravel on the Landowners' property is of "unbelievable" quality; one of the best deposits he's ever seen. He calculated the total sand and gravel tonnage lost by the Landowners' due to ODOT's appropriation as 7,233,752 tons. Testimony indicated that Olen and other purchasers have paid the Landowners between twenty-five cents and one dollar per ton to mine the Landowners' sand and gravel. Holland testified that the large quantity and superior quality of the sand and gravel combined with other factors, such as the property location and lack of zoning restrictions, make the Landowners' property particularly attractive for mining. The Landowners proffered Holland's testimony regarding what Olen would consider an acceptable price for the property, but the trial court excluded the testimony upon ODOT's objection.
 {¶ 9} ODOT's expert appraiser, Wilmer Driggs, testified that based on comparable sales, the Landowners' taken and damaged property is worth $89,500, or an average of $2,750 per acre. Driggs opined that the highest and best use of the property is for mining, and that an accurate measure of fair market value would be the amount that a mining company would be willing to pay for the property. Driggs further testified that factors such as the quantity and quality of deposits, property location, and zoning regulations impact an assessment of fair market value. However, Driggs admitted that he did not take these factors into consideration when assessing the fair market value of the Landowners' property. Driggs also admitted that he appraised the property at an amount less than the value the State of Ohio assigned to the property for tax purposes. Driggs testified that residential lots in the area could sell for $20,000 per acre, but opined that the Landowners' property is a "different type" of property.
 {¶ 10} During closing arguments, counsel for the Landowners referred several times to the fact that Cydrus opined that the land was worth $10,000 per acre. The jury returned a verdict for $627,120, which amounts to an average of approximately $17,130 per acre of land taken or damaged, and the court filed a judgment entry in conformity with the jury's verdict. Thereafter, ODOT filed a motion for a new trial and/or for a remittitur.
 {¶ 11} After conducting a hearing on ODOT's motion, the trial court found that the evidence supported a value for the taken and damaged land of no more than $352,000, or $10,000 per acre. Therefore, the court entered a judgment of remittitur in which it held that the jury's verdict was excessive and not sustained by the evidence. The court gave the Landowners fourteen days to accept the remittitur. When the Landowners declined to accept the remittitur, the trial court granted ODOT a new trial pursuant to Civ.R. 59(A)(6).
 {¶ 12} The Landowners appeal, asserting the following single assignment of error: "The trial court erred in granting plaintiff a new trial."
 II. {¶ 13} Pursuant to Civ.R. 59(A)(6), a trial court may grant a new trial if it finds that the judgment is not sustained by the weight of the evidence. Civ.R. 59(A) further provides that when the trial court grants a new trial, "the court shall specify in writing the grounds upon which such a new trial is granted." The trial court's statement of reasons must be sufficient to allow a reviewing court to determine whether the trial court abused its discretion in ordering a new trial. Mannion v. Sandel,91 Ohio St.3d 318, 321-322, 2001-Ohio-47, citing Antal v. Olde WorldeProducts, Inc. (1984), 9 Ohio St.3d 144. We determine whether the trial court's statement of reasons is sufficient to comply with Civ.R. 59(A) on a case-by-case basis. Id.
 {¶ 14} The trial court is afforded wide discretion in determining whether the jury's verdict is against the manifest weight of the evidence. Mannion at 322; Jenkins v. Krieger
(1981), 67 Ohio St.2d 314, 320. "It is not the place of this court to weigh the evidence in these cases." Mannion at 322. Rather, we may reverse an order for a new trial based upon the manifest weight of the evidence only upon finding an abuse of discretion. Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus; Mannion at 322. An abuse of discretion involves more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-138; Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169.
 {¶ 15} The Landowners suggest in their brief that we should apply a more stringent standard when dealing with a decision to set aside the verdict based upon the weight of the evidence than with other discretionary new trial decisions. However, we are required to follow the law as it is interpreted by the Supreme Court of Ohio. Mannion at 322. Thus, while the trial court "may not set aside a verdict upon the weight of the evidence upon a mere difference of opinion between the court and the jury,"Rohde at 92, the Supreme Court of Ohio has specifically rejected the application of an enhanced standard of review to new trials ordered based upon the weight of the evidence. SeeMannion at 322. Instead, "[w]here the trial court's decision on the motion for a new trial involves questions of fact, as in this case, our task as a reviewing court is to `view the evidence favorably to the trial court's action rather than to the jury's verdict.'" Osler v. Lorain (1986), 28 Ohio St.3d 345, 351, quoting Jenkins, 67 Ohio St.2d at 320; Mannion at 322.
 {¶ 16} We afford such deference to the trial court's discretion because the trial court is able to observe "the surrounding circumstances and atmosphere of the trial." Malonev. Courtyard by Marriott Ltd. Partnership (1996),74 Ohio St.3d 440, 448, quoting Rohde at 94; Mannion at 322, quotingJenkins at 320. Additionally, we afford such latitude to the trial court's manifest weight determination on a motion for a new trial because, unlike an order for judgment notwithstanding the verdict, "the order of a new trial does not terminate a case; instead, it simply grants a new trial." (Emphasis in original.)Malone at 448.
 {¶ 17} Our first task is to determine whether the trial court sufficiently detailed its reasoning in writing to allow this court to conduct a meaningful review to determine whether the trial court abused its discretion in ordering a new trial.Mannion at 322. The trial court's statement of its reasons will be "deemed insufficient if simply couched in the form of conclusions or statements of ultimate fact." Mannion at 322, quoting Antal.
 {¶ 18} Here, the trial court stated in its judgment entry that the Landowners had not accepted the remittitur, and ordered, "in conformity with the previous judgment of this Court, Plaintiff is hereby granted a new trial pursuant to Ohio Civil Rule 59(A)(6)." On its face, the entry clearly does not constitute an adequate statement of the trial court's rationale for granting the motion for a new trial. However, the court arguably incorporated its judgment entry for remittitur into its order for a new trial by reference. In the judgment entry for remittitur, the trial court specifically held that the upper limit of the valuation testimony received at trial was $352,000. Additionally, ODOT notes that at the hearing on its motion, the trial court stated, "the outer end of the damages testimony in this matter was Mr. Cydrus's testimony that the property was worth ten thousand dollars an acre. The twenty thousand dollars an acre referred to neighboring property that was being sub-divided for residential purposes. Obviously highest and best use was residential. Not an issue in this case where agreed highest and best use was for gravel operation."
 {¶ 19} While we believe that the adequacy of the trial court's written statement is marginal, we decline to remand this case for the trial court to better articulate its reasons for granting a new trial. The Landowners did not raise the issue of whether the trial court satisfied the requirement that it adequately state its reasons for granting a new trial. "[A]ppellate courts that have remanded Civ.R. 59(A)(6) rulings for more sufficiently detailed holdings have done so when the adequacy of the journal entry was actually raised on appeal[;] none have raised the issue sua sponte." Scibelli v. Pannunzio,
Mahoning App. No. 02CA175, 2003-Ohio-3488, at ¶ 11. However, because the Civ.R. 56(A) directive that the trial court put its reasons for granting a new trial in writing is mandatory, we confine our determination regarding whether the trial court abused its discretion to the reasons actually articulated in writing, and do not consider the trial court's oral statements.
 {¶ 20} The trial court's written statement of its reason for finding that the jury's verdict was not sustained by the evidence is limited to the court's statement that $352,000 "is the upper limit of the valuation testimony received at trial." Thus, the trial court based its ruling upon a finding that the record does not contain any evidence supporting a verdict of more than $352,000. Our review of the record does not support this rationale. While we refrain from weighing the evidence, and view the evidence in a light favorable to the trial court's ruling, we nonetheless find upon review of the record that it containssome evidence of a valuation higher than $352,000. Specifically, the record contains Cydrus' testimony that is worth "a lot more than $10,000 per acre," and his statement that such a price would be a "steal" given that the mineral deposits are 110 feet deep. Additionally, the record contains testimony from mining industry experts regarding the assets on the property, specifically the superior quality, high value, and large quantity of mineral deposits, and testimony that indicated that these assets are further enhanced by the location and zoning of the land. Thus, the trial court's finding of a complete absence of higher valuation testimony is not reasonable.
 {¶ 21} Upon review of the trial court's written rationale for granting ODOT's motion for a new trial, we find that the trial court abused its discretion in granting the motion. Contrary to the trial court's finding, the record contains some evidence supporting the jury's verdict. Therefore, we sustain the Landowners' assignment of error, reverse the judgment of the trial court, and order the trial court to issue an entry reinstating the jury's verdict.
Judgment reversed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment only.