DECISION AND JUDGMENT ENTRY
{¶ 1} Jared Ray, Robert Ray, and Shaphan Ray (collectively "Rays") appeal the judgment of the Washington County Common Pleas Court, Probate Division, in favor of Sherry L. Pallay. The Rays requested the probate court to exclude certain IBM stock and the proceeds from certain U.S. Savings Bonds from Helen Pallay's estate. On appeal, the Rays contend that the trial court erred when it ordered the IBM stock included in the estate because the stock did not have a payable on death ("POD") or joint tenants with right of survivorship ("JTWROS") designation. Because another probate court years earlier ordered that Helen's guardian could only invest certain money in the stock if it included the POD or JTWROS designation, we agree that the trial court abused its discretion. The Rays further contend that the trial court erred because it failed to consider Helen's intention regarding the proceeds from the U.S. *Page 2 
Savings Bonds. Because the bonds matured before Helen's death, and because the guardian's duty is to preserve the assets for the benefit of the ward, we disagree. Accordingly, we affirm, in part, and reverse, in part, the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.
 I. {¶ 2} On September 17, 1984, the Mahoning County Probate Court appointed Diana Ray guardian of the person and estate of Helen. Diana and Sherry are Helen's daughters. The Rays are children of Diana, now deceased, and the grandchildren of Helen.
 {¶ 3} In October 1985, the Mahoning County Probate Court issued a judgment entry allowing Diana, as guardian, to "remove the Ward's funds from the Central Trust Company and the Marietta Savings and Loan Association and prudently invest such funds * * *" in a number of investments, including the authorization "to invest a portion of the Ward's funds in shares of common stock in IBM and Tri-Continental Corporations, provided said investment is prudent and does not exceed five (5) percent of the Ward's estate." Further, the order allowed Diana to "re-invest the three payable on death accounts for the three grandchildren in F.D.I.C. insured member banks to take advantage of superior interest rates or in investments described in the preceding paragraphs which she may prudently decide, provided such funds are designated in the following manner: `Helen Pallay, her guardian, Diana J. Ray, in trust for the designated grandchildren of the Ward, in equal shares, per stirpes, which funds are payable on death to said grandchildren.'" *Page 3 
 {¶ 4} Pursuant to exhibits accepted by the trial court and admitted at the hearing on April 15, 2005, without objection, The Central Trust Company, in July 1985, held the following accounts: (1) Acct. No. 612330-9 — Helen L. Pallay, Diana J. Ray, GDN. in trust for Robert Milton Ray III in the amount of $3,725.37 on July 17, 1985; (2) Acct. No. 612331-7 — Helen L. Pallay, Diana J. Ray, GDN. in trust for Jared Stephen Ray in the amount of $3,725.37 on July 17, 1985; and (3) Acct. No. 612329-5 — Helen L. Pallay, Diana J. Ray, GDN. in trust for Shaphan Aaron Ray in the amount of $3,725.37 on July 17, 1985. The guardian closed all three accounts on July 17, 1985.
 {¶ 5} Thereafter, New England Life Equity Services Corporation held three accounts: (1) Account No. 041-017388 — Diana J. Ray, custodian for Robert Milton Ray III; (2) Account No. 041-017396 — Diana J. Ray, custodian for Jared Stephen Ray; and (3) Account No. 041-017418 — Diana J. Ray, custodian for Shaphan Aaron Ray. For all three New England accounts, the guardian deposited a check into each account on November 14, 1985 in the amount of $3,793.04. On November 18, 1985, the guardian used $3,731.00 of the funds in each of those accounts to purchase twenty-eight (28) shares of IBM stock for each grandchild. An additional IBM share was purchased for each account on December 12, 1985.
 {¶ 6} A letter written by James F. Calvert, CFP, on January 26, 1986, somewhat corroborates the transactions set forth in the ledgers. In the letter, Mr. Calvert stated that the money taken from the grandchildren's accounts at The Central Trust Bank were used to purchase 28 shares of IBM stock for the grandchildren. Diana and her husband added money to the leftover money in each of the accounts to purchase an additional share of IBM stock for each grandchild. *Page 4 
 {¶ 7} The letter further states that "each of the boys has two sets of shares[,] the first set which was the original purchase of 28 shares and the extra 1 share that was purchased with the remaining money and the $233.15 that Bob and Diana added." Further, the letter states that "these stocks should not be a part of the estate settlement, because the money had already been given to the boys by Mr. Mrs. Pallay and Bob and Diana Ray and these transactions are the investment of that money." However, James Calvert stated that IBM refused to title the stocks with the language set forth in the probate court's order.
 {¶ 8} Documents presented by the grandchildren in the trial court also show that there were twenty-two savings bonds titled jointly to Helen L. Pallay or Robert M. Ray III; twenty-two U.S. Savings Bonds titled jointly to Helen L. Pallay or Jared S. Ray; and twenty-two U.S. Savings Bonds titled jointly to Helen L. Pallay or Shaphan A. Ray. However, such evidence is in the form of a ledger captioned "U.S. Savings Bonds" with "Page 8" in the upper right-hand corner. It is unknown who created the ledger.
 {¶ 9} Jared testified that he believed that as the U.S., E Series, Savings Bonds matured, his mother, as guardian of his grandmother Helen, would cash the bonds and transfer those funds into Wesbanco savings accounts. The Rays provided statements to the trial court regarding five Wesbanco savings accounts that the guardian created from the proceeds from the bonds: (1) Account No. 0363003001 — Helen L. Pallay or Diana J. Ray guardian or Sherry L. Pallay in the amount of $2,855.12 on March 6, 2003; (2) Account No. 0363032999 — Helen L. Pallay or Diana J. Ray guardian in the amount of $2,572.50 on March 6, 2003; (3) Account No. 0350830015 — Helen L. Pallay/Robert M. Ray III in the amount of $4,589.31 on March 6, 2003; (4) Account No. 0350829815 — *Page 5 
Helen L. Pallay/Jared S. Ray in the amount of $4,550.91 on March 6, 2003; and (5) Account No. 0350826315 — Helen L. Pallay/Shaphan A. Ray in the amount of $4,550.89 on March 6, 2003.
 {¶ 10} In June 2000, the trial court appointed Jared guardian of Helen's person and estate following the death of his mother. On January 23, 2003, the trial court gave Jared permission, as successor guardian, to liquidate and transfer the funds in the five Wesbanco accounts to the guardianship checking account. Jared requested the transfer of those funds to the guardianship checking account to provide for Helen's medical and health related needs. The March 6, 2003, Wesbanco statements show those five accounts closed as of March 5, 2003. Helen died on July 2, 2003. A substantial portion of the funds transferred to the guardianship checking account from the five Wesbanco accounts remained in the account because Helen died soon after the transfer. The record does not show the exact balance in the account.
 {¶ 11} On January 21, 2005, the Rays moved the probate court to distribute the IBM stock and the proceeds from the bonds, i.e., the proceeds from the savings bonds that went into the Wesbanco accounts and then into the guardianship checking account, directly to them without going through Helen's estate. The trial court denied the Rays' motion, ruling that Helen's assets should be distributed according to her will unless there is a specific POD designation or JTWROS designation.
 {¶ 12} The Rays appeal and assert two assignments of error: I. "The trial court erred in ordering that all assets of the Estate of Helen L. Pallay shall pass in accordance with the terms of her will unless clearly titled and held in either a POD or JTWROS designation, without considering the effect of and in disregard of the prior Judgment *Page 6 
Entry of the Mahoning County Probate Court." And, II. "The trial court erred in ordering that all assets of the Estate of Helen L. Pallay shall pass in accordance with the terms of her will unless clearly titled and held in either a POD or JTWROS designation, without considering the decedent's intentions."
 II. {¶ 13} The Rays contend in both assignments of error that the trial court erred when it failed to consider a prior probate court's order regarding the IBM stock and failed to consider the decedent's intentions. They maintain that the trial court should distribute the stock and the proceeds from the bonds directly to them. They claim that the court should not distribute this property according to Helen's will.
 {¶ 14} Probate courts have "exclusive jurisdiction * * * [t]o * * * order the distribution of estates." R.C. 2101.24(A)(1)(c). Appellate courts "review a probate court's decision regarding such matters under an abuse of discretion standard." In re Estate of Lilley, Warren App. No. CA2005-08-091, CA2005-08-92, CA2005-08-095, CA2005-08-096,2006-Ohio-5510, ¶ 12, citing In re Estate of Platt, 148 Ohio App.3d 132,2002-Ohio-3382. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Wright v. Suzuki MotorCorp., Meigs App. No. 03CA2, 03CA3 and 03CA4, 2005-Ohio-3494, ¶ 112, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When an appellate court applies this standard, it "may not substitute its judgment for that of the trial court." Gordon Proctor Dir. of Trans. v.Cydrus (Nov. 4, *Page 7 
2004), Ross App. No. 04CA2758, 2004-Ohio-5901, ¶ 14, citing In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-138.
 A. IBM Stock {¶ 15} A guardian does have the power "to designate a change in the registration of his ward's P.O.D. account[.]" Miller v. Peoples FederalSavings Loan Assn. (1981), 68 Ohio St.2d 175, 178. However, that power can be limited by the probate court, because a probate court "having jurisdiction of the guardianship matter is superior guardian, while the guardian himself is deemed to be an officer of the court." In reGuardianship of Jadwisiak (1992), 64 Ohio St.3d 176, 180. Where the guardian changes the legal status of funds without authority to do so, those accounts retain their intended identity, "regardless of the form in witch the bank accounts were held by the guardian during guardianship * * *." Guerra v. Guerra (1970), 25 Ohio Misc. 1, 7-8; see, also, In reEstate of Lilley, Warren App. No. CA2005-08-091, CA2005-08-092, CA2005-08-095, CA2005-08-096, 2006-Ohio-5510.
 {¶ 16} Here, the probate court in another county ordered the guardian to title the IBM stock, purchased with the funds held in the accounts held in trust for the grandchildren, as "Helen Pallay, her guardian, Diana J. Ray, in trust for the designated grandchildren of the Ward, in equal shares, per stirpes, which funds are payable on death to said grandchildren." The guardian by law had to follow this order because the court is the superior guardian. However, the guardian failed to do so. Therefore, the IBM stock retained its intended identity as POD accounts, payable to the grandchildren at Helen's death. Consequently, the trial court abused its discretion insofar as it ordered this property distributed according to Helen's will. See Giurbino v. Giurbino *Page 8 
(1993), 89 Ohio App.3d 646 (holding that funds involved in a POD account "do not become part of the decedent's estate").
 {¶ 17} Accordingly, we sustain the Rays first assignment of error and find any argument involving the IBM stock in the second assignment of error moot.
 B. Proceeds From Bonds {¶ 18} The proceeds of U. S. savings bonds following their maturity belong to the estate of a deceased ward where the ward purchased the bonds solely with the ward's funds and the funds remained in the control of the ward (or ward's guardian) during the ward's lifetime despite the fact that the bonds were registered in the names of the ward and another before their maturity. In re Guardianship of Sachs (1962),173 Ohio St. 270, 275-276.
 {¶ 19} In Sachs, as the savings bonds matured, the guardian cashed them and placed the proceeds in the guardianship checking account. The Supreme Court agreed with the court of appeals, which stated that the ward, had she remained competent, "could have cashed the bonds and claimed the entire proceeds for herself, to do with thereafter as she might see fit, for they were purchased entirely with her funds and she never divested herself of possession, dominion and control over them." Id. at 274.
 {¶ 20} According to Sachs, "the guardian of the ward, who became incompetent subsequent to purchase [of the bonds], may after maturity of the bonds, redeem them without the necessity of application to the court and without notice to a co-owner who never had possession, who never invested any money therein, but who, by contract and government regulation, had a right of survivorship in the bonds during the term thereof, until their maturity and redemption." Id. at 276. After redeeming the proceeds of the *Page 9 
bonds, the guardian cannot "then make a new contract on [the ward's] behalf, which would benefit [the other registrant on the bond] or any other third-party, for it was their duty to preserve the guardianship estate for the benefit of their ward." Id. at 276-277.
 {¶ 21} Here, according to Jared, the guardian cashed the mature bonds and placed the proceeds in five separate Wesbanco savings accounts bearing Helen Pallay's name, along with the names of her two children and three grandchildren, respectively. The guardian's duty in redeeming the proceeds of the bonds was to preserve those proceeds for the benefit of the ward. Eventually, the guardian transferred these proceeds to the guardianship checking account with the approval of the court. The court found that it was in the ward's best interest. Therefore, pursuant toSachs, this part deposited in the guardianship checking account belongs in Helen's estate.
 {¶ 22} Further, the fact that the guardian placed the proceeds of the bonds in joint accounts, some of which also bore the name of the Rays, does not take those funds outside of the estate. While the savings accounts were joint accounts, the Rays did not present any evidence that the accounts were survivorship accounts. The distinction between a joint account and a joint account with rights of survivorship is critical. The Ohio Supreme Court holds that "[t]he opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death." Wright v. Bloom (1994), 69 Ohio St.3d 596, at paragraph two of syllabus. However, "[t]he opening of a joint or alternative account without a provision for *Page 10 
survivorship shall be conclusive evidence, in the absence of fraud or mistake, of the depositor's intention not to transfer a survivorship interest to the joint or alternative party or parties in the balance of funds contributed by such depositor remaining in the account at his or her death. Such funds shall belong in such case exclusively to the depositor's estate, subject only to claims arising under other rules of law." Id. at paragraph three of syllabus.
 {¶ 23} Here, because the Wesbanco accounts were not survivorship accounts, the proceeds in those accounts were part of the depositor's estate. Therefore, the trial court did not abuse its discretion in so holding.
 {¶ 24} Accordingly, we overrule the Rays second assignment of error as it relates to the proceeds from the U.S. savings bonds.
 III. {¶ 25} In conclusion, we affirm, in part, and reverse, in part, the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART. *Page 11 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND THIS CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion and Appellants and Appellee to split evenly the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Dissents.
 Harsha, J.: Concurs in Judgment Only. *Page 1