[Cite as *Wolf v. Interstate Wrecker Serv., Inc.*, 2012-Ohio-1744.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.  97144

## GREGORY J. WOLF

PLAINTIFF-APPELLEE

vs.

## INTERSTATE WRECKER SERVICE, INC., ET AL.

DEFENDANTS-APPELLANTS

### JUDGMENT:
### REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-697658

**BEFORE:**   Boyle, P.J., Jones, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   April 19, 2012

**ATTORNEY FOR APPELLANTS**

Jan L. Roller
Davis & Young
1200 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio    44114

**ATTORNEY FOR APPELLEE**

Stephen G. Thomas
Stephen G. Thomas & Associates Co., LPA
100 North Main Street
Suite 235
Chagrin Falls, Ohio    44022

**For Ohio Bureau of Workers' Compensation**

Andrew P. Cooke
Andrew Cooke & Associates, LLC
243 North Fifth Street, 3rd Floor
Columbus, Ohio    43215

MARY J. BOYLE, P.J.:

**{¶1}** Defendants-appellants, Interstate Wrecker Service, Inc. ("Interstate"), and Randy Montgomery, appeal the trial court's decision ordering a new trial for plaintiff-appellee, Gregory Wolf. Finding merit to this appeal, we reverse the trial court's decision and reinstate the jury's verdict.

<u>Procedural History and Facts</u>

**{¶2}** The underlying case stems from an automobile collision, wherein Montgomery, who was driving his employer's tow truck, rear-ended Wolf's vehicle that was stopped in traffic on Route 91 in Hudson. Wolf subsequently filed suit against Montgomery and Interstate, seeking to recover damages for the injuries that he allegedly sustained as a result of the accident.

**{¶3}** Although the defendants admitted that Montgomery was negligent and was in the scope of his employment at the time of the accident, they denied that Montgomery's negligence caused Wolf's alleged injuries.[1] Interstate further denied that it was negligent to entrust Montgomery with its vehicle. The matter proceeded to a jury trial on these issues where the following evidence was presented.

---

[1] Wolf asserted a respondeat superior claim against Interstate, seeking to impose liability upon Interstate for Montgomery's negligence as a result of Montgomery being in the course and scope of his employment at the time of the accident.

{¶4} Wolf testified that on May 5, 2005, he was en route to a Hudson grocery store, accompanied by his boss, when he was rear-ended by Montgomery. According to Wolf, he felt an immediate sharp pain in his right leg and a numbness upon impact. Wolf did not seek immediate treatment because he did not want to interfere with the prearranged sales call with his boss. Later in the day, after dropping his boss off at the airport, Wolf sought treatment in the emergency room of Cleveland MetroHealth Hospital.

{¶5} Wolf subsequently followed up with his primary physician, Dr. Thomas Mandat, who referred him to physical therapy and later to Dr. Peter Fragatos, a neurosurgeon. According to Wolf, his condition did not improve following the physical therapy and nerve injections; instead, the pain persisted. Upon recommendation of Dr. Fragatos, Wolf ultimately had surgery on his lumbar spine in 2008. Wolf testified that prior to surgery, his "pain was 24/7" and that his pain level was a "10" on a scale of one to ten. Following the surgery, Wolf indicated that he continues to experience pain at a level between "7 and 10."

{¶6} Wolf was 53 years old at the time of the accident and working as a food broker and salesman in the food industry. The job required him to handle food products weighing up to 100 pounds, including shelving the food items and discarding them. Following the accident, Wolf continued to work until November 2005. He

ultimately stopped working, testifying that the injuries from the accident physically prevented him from doing "a normal day's work."

{¶7} Kimberly Togliatti-Trickett, a physician who is board certified in physical medicine, rehabilitation, and internal medicine, testified on behalf of Wolf. Dr. Trickett stated that in October 2005 and then again in October 2008, she performed an electromyography ("EMG") — a diagnostic test to identify any "nerve root" irritation — on Wolf. According to Dr. Trickett, the October 2005 EMG results revealed that Wolf suffered an acute nerve root injury (the S1 radiculopathy) that was proximately caused by the May 2005 accident. The 2008 EMG results further revealed that Wolf no longer had an acute injury; instead, the results revealed signs of a chronic injury that was starting to heal. Based on a review of Wolf's medical records and her examination of him, Dr. Trickett also opined that Wolf would not be able to return to his same line of work as a result of the accident.

{¶8} Wolf submitted medical bills, prescription costs, and other miscellaneous out-of-pocket expenses, totaling approximately $46,200, that he claimed to have incurred as a result of Montgomery's negligence. Wolf further presented evidence of lost wages — past and future — that equaled approximately $732,000.

{¶9} Conversely, defendants disputed that Wolf's injuries were proximately caused by Montgomery's negligence. Montgomery testified that he was driving only five miles per hour when he rear-ended Wolf, who was stationary in bumper-to-bumper

traffic in a construction zone. Defendants emphasized that it was a low-impact collision, evidenced by the fact that Wolf's vehicle did not hit the vehicle in front of him. Defendants further maintained at trial that Wolf's surgery and other treatments were not necessary as a result of the accident. In support of their defense, defendants presented the testimony of Dr. Timothy Gordon.

{¶10} Dr. Gordon, who is board certified in orthopedic surgery, testified that he examined Wolf on June 12, 2007 — two years after the accident but prior to Wolf's surgery. Dr. Gordon also reviewed all of Wolf's past medical records, including his MRI scans and two EMG results. According to Dr. Gordon, Wolf's MRI revealed that he suffers from "canal stenosis" in his lumbar spine, which means that the canal has "narrowed." Dr. Gordon explained that Wolf's condition "is a combination of a congenital preexisting condition of a small tunnel and that then the arthritic change of the facet hypertrophy, the arthritis in the spine over time has made it smaller." Dr. Gordon stated that the MRI, taken a month after the accident, confirms that this condition existed prior to the accident because "these findings take years to form." He opined that Wolf had "progressive spinal stenosis over the years."

{¶11} Dr. Gordon further testified that Wolf's injury from the 2005 car accident was "a soft tissue strain of the muscles, neck, and low back area." He indicated that this would cause pain but that the injury would have healed in six to eight weeks

following the accident. Dr. Gordon opined that the treatment of such injury would cost "in the area of two to three thousand dollars."

{¶12} Through cross-examination of Wolf's witnesses, the defense also established that Wolf had provided inconsistent information regarding his past medical treatment and injuries. For example, in connection with first seeing Dr. Fragatos, Wolf had indicated that he never had symptoms of pain in his lower back prior to the May 2005 accident. The record revealed, however, that Wolf had repeatedly complained of pain in his lower back, starting in 1997 following a car accident, and had complained of other symptoms, such as leg pain, that he was now asserting were solely caused by the underlying accident. Wolf had also reported to Dr. Trickett that he was hit by a tow truck going "30 to 35 miles per hour" despite the fact that Wolf had no basis for such an assertion and the evidence revealed that he was in "stop and go" traffic with approximately 10 to 15 cars in front of him.

{¶13} Following deliberations, the jury returned its verdict, finding that Montgomery's negligence caused injury to Wolf and awarded him $2,435.14 in total compensatory damages. The jury specified that this amount represents damages for economic loss only, thereby awarding zero for non-economic loss, i.e., pain and suffering. The jury further found in favor of Interstate on Wolf's negligent entrustment claim. Over the objection of defense counsel, the trial court ordered that the jury deliberate further, instructing the jury to "recalculate [the compensatory

damages] so that there is a portion of compensatory damages that represents damages for non-economical loss." The jury then deliberated further, increasing their award of total compensatory damages to $2,685.14, awarding $2,435.14 for economic loss and $250 for non-economic loss.

{¶14} Wolf subsequently filed a motion for a new trial on the issue of damages under Civ.R. 59(A). Fourteen months later, the trial court granted Wolf's motion under Civ.R. 59(A)(6) on the grounds that "the judgment is not sustained by the weight of the evidence."

{¶15} From that decision, defendants appeal, raising a single assignment of error:

{¶16} "The trial court's decision to grant a new trial was an abuse of discretion and is not supported by competent, credible evidence."

### Standard of Review

{¶17} The decision whether to grant a new trial under Civ.R. 59(A)(6) — the weight of the evidence — rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court." *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus. As always, an abuse of discretion implies that the court's attitude was

"unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶18} This deferential standard of review requires this court to view the evidence favorably to the trial court's action rather than the jury's verdict. Indeed, "[i]t is not the place of this court to weigh the evidence in these cases." *Mannion v. Sandel*, 91 Ohio St.3d 318, 322, 744 N.E.2d 759 (2001).

{¶19} But if the trial court's stated rationale for granting a motion for a new trial under Civ.R. 59(A)(6) is contradicted by the record, such a decision implies an attitude that is unreasonable and must be reversed. *See Proctor v. Cydrus*, 4th Dist. No. 04CA2758, 2004-Ohio-5901 (reversing trial court's decision to grant a new trial when the trial court's reasoning was not supported by the record.) The trial court's discretion is not so great that it can grant a motion for a new trial under Civ.R. 59(A)(6) simply because it disagrees with the jury's verdict. *See Santoli v. Marbuery*, 8th Dist. No. 72110, 1998 WL 241990 (May 14, 1998).

{¶20} With this standard of review in mind, we turn to the crux of the appeal: whether the trial court abused its discretion in granting Wolf's motion for a new trial based on the weight of the evidence.

<u>Weight of the Evidence</u>

{¶21} Under Civ.R. 59(A)(6), a trial court may grant a new trial when a judgment is not supported by the weight of the evidence. In granting a new trial for

this reason, a trial court must weigh the evidence and pass upon the credibility of the witnesses, "not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." *Rohde*, 23 Ohio St.2d 82, paragraph three of the syllabus. As stated above, the trial court may not set aside the jury's verdict under Civ.R. 59(A)(6) due to a "mere difference of opinion." *Id.* at 92. "[R]ather, the relief should be granted only when the trial court is persuaded that there is insufficient credible evidence to sustain the verdict in light of the other evidence presented." *Green v. Bailey*, 1st Dist. No. C-070221, 2008-Ohio-3569, ¶ 13.

*Negligence Claim*

{¶22} Before turning to the grounds in which the trial court granted a new trial, we first set forth the elements of Wolf's claim for negligence — the sole claim that the trial court awarded a new trial. The elements of a negligence claim are (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996). At trial, defendants had admitted to the first two elements. The only issues at trial centered around causation and damages.

*Dr. Trickett's Testimony on EMG Finding*

{¶23} In granting Wolf's motion for a new trial, the trial court found that the jury's verdict was against the manifest weight of the evidence, finding the following:

> Plaintiff presented uncontroverted scientific expert testimony of the reliability of the EMG studies to establish the time frame when his nerve injury occurred. Defendant's contrary testimony by defendant's medical expert was, by his own admission, not based on a review of the scientific literature of EMG studies.

{¶24} This rationale, however, is not supported by the record. While the trial court was correct in stating that Wolf relied on EMG studies to establish that he suffered a nerve injury and that the defendants did not challenge this finding or Dr. Trickett's testimony about when the finding would be detectable by EMG, the defense adamantly disputed that the nerve injury was caused by the May 2005 accident. Indeed, the gravamen of the entire defense was that Wolf's claimed injuries were not caused by the May 2005 accident; they arose from his pre-existing spinal stenosis. This defense was supported by Dr. Gordon's expert testimony.

{¶25} The trial court seems to have mistakenly interpreted Dr. Trickett's testimony as conclusively establishing that the May 2005 accident caused Wolf's nerve root injury because Dr. Gordon did not rely on EMG studies in reaching his opinion. But this rationale is flawed. The mere fact that Dr. Gordon based his expert opinion on test results other than EMG studies, such as the MRI, does not automatically render his opinion irrelevant to the fact finder.

**{¶26}** Moreover, and perhaps most significantly, Dr. Trickett conceded on cross-examination that the nerve injury could have occurred before the May 5, 2005 car accident based on the applicable time line for detecting acute nerve injuries on an EMG. Dr. Trickett testified that the time line of when an acute nerve root injury would appear on an EMG is generally six months but could be ongoing for a year in "very, very limited" circumstances. Therefore, Dr. Trickett's testimony did not conclusively establish that the May 2005 car accident caused Wolf's nerve injury. And while Dr. Trickett opined that she believed that the nerve injury was attributed to the accident, the jury clearly disagreed and did not find Dr. Trickett's testimony determinative on the issue of causation — a determination that rests squarely within the province of the jury.

**{¶27}** We further note that the defense disputed the significance of the EMG finding. Although Dr. Trickett opined that the October 2005 EMG finding demonstrated that the acute nerve injury must have been caused by the May 2005 car accident by mere timing, Dr. Gordon conversely testified that the EMG finding was not surprising given Wolf's condition of spinal stenosis — a condition totally unrelated to the car accident. And to the extent that the jury found Dr. Gordon's testimony more persuasive, the record contains competent, credible evidence to support that finding.

**{¶28}** Thus, while we refrain from weighing the evidence, and view the evidence in a light favorable to the trial court's ruling, we nonetheless find that the trial court's stated reasoning does not accurately reflect the record and is therefore unreasonable.

*Inadequacy of the Damages*

**{¶29}** We next turn to the trial court's second stated reasoning for finding that the verdict was not supported by the weight of the evidence: the inadequacy of the damages. Specifically, the trial court noted that the award of damages failed to include those services that Wolf initially received at the emergency room and by his primary care physician.

**{¶30}** A trial court is not at liberty to disturb a jury's verdict on damages except under very limited circumstances. As this court has previously stated,

> The assessment of damages lies so thoroughly within the province of the trier of fact that a reviewing court is not at liberty to disturb the trier of fact's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive or inadequate.

**{¶31}** *DeCapua v. Rychlik*, 8th Dist. No. 91189, 2009-Ohio-2029, ¶ 22, citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994).

**{¶32}** In order to set aside a judgment as inadequate and against the manifest weight of the evidence, a reviewing court must determine that "the verdict is so gross as to the shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." *Bailey v. Allbery*, 88 Ohio App.3d 432, 435, 624 N.E.2d 279 (2d Dist.1993). Thus, where it appears the jury awarded inadequate damages because it failed to consider an element of damages established by

uncontroverted expert testimony, a new trial should be ordered. *Dillon v. Bundy*, 72 Ohio App.3d 767, 596 N.E.2d 500 (10th Dist.1991).

{¶33} In this case, it appears that the trial court substituted its opinion for that of the jury. The trial court clearly found that the damages were inadequate. The defense, however, contradicted Wolf's claimed damages except medical bills between $2,000 to $3,000. Specifically, Dr. Gordon testified that the nature of Wolf's soft-tissue injury would result in approximately $2,000 to $3,000 in medical expenses for a treatment period of six to eight weeks. The jury's verdict fell squarely within the amount of damages advanced by the defense. Thus, we find that the trial court acted unreasonably in setting aside the verdict.

{¶34} Accordingly, we sustain Montgomery and Interstate's sole assignment of error.

{¶35} Judgment reversed and case remanded with instructions for the trial court to reinstate the verdict of the jury.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR