[Cite as *Petruziello v. Aris Teleradiology Professional Corp.*, 2019-Ohio-1347.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 107432**

---

**LAURA PETRUZIELLO, ET AL.**

PLAINTIFFS -APPELLEES

vs.

**ARIS TELERADIOLOGY PROFESSIONAL
CORP., ET AL.**

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-871926

**BEFORE:** Keough, J., Blackmon, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 11, 2019

**ATTORNEYS FOR APPELLANTS**

Stacy A. Starcher
Jillian L. Dinehart
Marshall, Dennehey, Warner & Coleman
127 Public Square, Suite 3510
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEES**

Dennis R. Lansdowne
Peter Brodhead
Spangenberg, Shibley & Liber, L.L.P.
1001 Lakeside Avenue, East, Suite 1700
Cleveland, Ohio 44114

Alyssa Landino
Spangenberg, Shibley & Liber, L.L.P.
200 Public Square, Suite 2300
Cleveland, Ohio 44114

Michael A. Hill
Eadie Hill Trial Lawyers
3100 East 45th Street, Suite 218
Cleveland, Ohio 44127

Seamus J. McMahon
3605 Warrensville Center Road
Shaker Hts., Ohio 44122

George Moscarino
Katherine L. Moscarino
Moscarino & Treu, L.L.P.
1422 Euclid Ave., Suite 630
Cleveland, Ohio 44115

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendants-appellants, Aris Teleradiology Professional Corp. and Edward R. Koehl, M.D. ("Dr. Koehl") (collectively "appellants"), appeal the trial court's decision granting a new trial in favor of plaintiffs-appellees, Michael F. Petruziello and Michael R. Petruziello, as Administrator of the Estate of Laura Petruziello, deceased (collectively "appellees"). For the reasons that follow, we affirm the trial court's decision and remand for further proceedings.

{¶2} In November 2016, Laura[1] and Michael F. Petruziello filed a medical negligence action against appellants, alleging that Dr. Koehl failed to detect changes on a July 2013 magnetic resonance imaging ("MRI") study of Laura's brain ("July 2013 Study"). The complaint alleged that as a result of Dr. Koehl's negligence, Laura's recurrence of metastatic breast cancer in the brain was not diagnosed for nearly a year after the July 2013 Study, and Laura was required to undergo extensive brain surgery that left her severely debilitated for the remainder of her life until her passing in 2017.

{¶3} The case was submitted to a jury, where the following relevant evidence was presented. In September 2006, Laura was diagnosed with Stage II-III left-sided breast cancer. Despite chemotherapy, a mastectomy of the left breast, and radiation, Laura was diagnosed in June 2011, with metastatic breast cancer to the left parietal lobe of the brain. A surgical resection of the brain tumor was performed in July 2011. Because of the risk of recurrence of brain cancer, Laura underwent brain screening MRIs for the purpose of detecting changes that might represent tumor recurrence.

{¶4} The issue at trial focused on the MRI screen that occurred on July 17, 2013. Dr. Koehl was the radiologist who performed the reading and report of the July 2013 Study. He

---

[1]Laura passed away during the pendency of the case; her son Michael R., as administrator of her estate, was substituted as a party.

issued a report, stating that he compared the screen to the April 9, 2013 screen ("April 2013 Study"), which was the last screen prior to the July screen. His report stated:

Findings: The visualized paranasal sinuses are clear. Orbital contents are appropriate. Surgical changes from left parietal craniotomy are noted.

Surgical defect in the left parietal lobe is stable. There is no appreciable recurrent disease although the examination is limited by lack of IV contrast material. No new brain lesions are identified. There is no mass effect, midline shift or hydrocephalus. There are no areas restricted diffusion within the brain parenchyma to suggest acute ischemia.

Impression: Stable surgical changes to the left parietal lobe and skull. Within limitations of a noncontrast examination, there are no appreciable new or recurrent metastatic lesions.

{¶5} In December 2013, Laura underwent another MRI screen that detected a likely recurrence of the tumor. In March 2014, Laura was diagnosed with recurrent metastatic breast cancer to the left parietal lobe that resulted in a large tumor in the "operative bed" — the site of the previous surgery. Laura underwent a surgical resection of the recurrent tumor, but she experienced complications, and unfortunately, passed away in November 2017.

{¶6} The plaintiffs' theory of the case was that if Dr. Koehl would have recognized the changes on the July 2013 Study, Laura would have had less invasive treatment options. The plaintiffs claimed that Laura's tumor had grown too large for radiation therapy and resection was her only viable option, from which she suffered profound neurological deficits. In support of their case, the plaintiffs presented the testimony of Dr. Emanuel Kanal, an expert in the field of radiology, who testified that the duty of the radiologist is to detect and report changes when reading brain MRI images, specifically signs of a recurrent brain tumor.

{¶7} Regarding the July 2013 Study, Dr. Kanal testified that the change in the operative bed of Laura's brain was readily observant, objectively significant, and should have been detected. Additionally, Dr. Kanal opined that Dr. Koehl did not meet the standard of care when

he failed to detect the change and further reported that the study was "stable." Finally, based on Laura's history and because the change occurred in the operative bed, or the site of her previous tumor, Dr. Kanal stated that he would have reported the changes on the July 2013 Study and would have described the changes as significant and are "concerning for recurrent or persistent tumor but are non-specific." (Tr. 519.) Dr. Kanal unequivocally stated that the July 2013 Study was not "stable" as Dr. Koehl reported. He admitted, however, that the MRI performed in April 2013 also showed an abnormality, but he characterized the abnormality as "subtle" and was not critical of the radiologist for not reporting this abnormality.

{¶8} The defense presented Dr. Michael Bruno, a radiology expert, who testified that although there was a change in the July 2013 Study that he would have mentioned in the report, he would have also explained that it did not merit additional action because there was only one change. Dr. Bruno agreed with Dr. Koehl that the study was "stable," but also recognized that it was "not completely unchanged." (Tr. 1091-1092.) Dr. Bruno opined, however, that Dr. Koehl did not breach the standard of care because it was "judgment call" — or did not "cross the action threshold" — on whether to report the change. He admitted that it is the radiologist's job to bring changes to the attention of the treating physician to let that physician make an informed decision. (Tr. 1087.) He admitted that the change observed could have been a range of possibilities, including a recurrence of a tumor. Despite this possibility, Dr. Bruno opined that Dr. Koehl's report that the study was "stable" was not a breach of the standard of care.

{¶9} Importantly, both Drs. Kanal and Bruno testified that there are two kinds of radiology error — detection and interpretation. Dr. Kanal testified that Dr. Koehl breached his standard of care when he did not detect significant changes in the July 2013 Study. Dr. Bruno

testified that Dr. Koehl did not breach his standard of care because the changes did not cross the action threshold, meaning that the changes were insignificant or subtle.

{¶10} Dr. Koehl also testified. He stated that he had no independent recollection of reading the screen; relying solely on his report of the July 2013 Study to recall the events. He testified that he compared the July image to the April image and did not "think there was a significant change" to make any further report. (Tr. 1158.) He testified that based on his report, his impression was that the operative area was "stable," and "compared to the prior examination, I did not appreciate a significant change." (Tr. 1160.) Dr. Koehl did not testify about his protocols or his usual course of action when reviewing brain MRI screens, stating that sometimes he looks at all the prior images, and sometimes he does not. Dr. Koehl admitted, however, that had he looked at all the prior studies, "he would have noticed a more significant change." (Tr. 1162.) Even with this hindsight, Dr. Koehl testified that he met the standard of care when he read the July 2013 image. (Tr. 1149.)

{¶11} The jury rendered a defense verdict on March 28, 2018. Thereafter, the appellees filed a motion for a new trial pursuant to Civ.R. 59(A)(6), contending that the verdict was against the manifest weight of the evidence.

{¶12} The trial court granted the appellees' motion for a new trial, finding that the defense verdict was not sustained by the weight of the evidence. The court specifically found that the jury's determination that Dr. Koehl did not deviate from the standard of care in the treatment that he provided to Laura was not supported by the testimonial evidence presented at trial.

{¶13} Appellants now appeal, contending in their sole assignment of error that the trial court abused its discretion in granting the motion for new trial.

## I. Appellate Standard of Review

{¶14} A motion for a new trial is reviewed differently at the appellate level than at the trial level; a reviewing court must view the evidence in a light most favorable to the trial court's decision, rather than in favor of the nonmoving party. *Collins v. Colonna*, 8th Dist. Cuyahoga No. 93907, 2010-Ohio-3613, ¶ 49, citing *Jenkins v. Krieger*, 67 Ohio St.2d 314, 320 423 N.E.2d 856 (1981) (evidence is viewed favorably to the trial court's action rather than to the jury's verdict). "The predicate for that rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice." *Jenkins* at *id*. "The trial court must weigh the evidence and pass on the credibility of the witnesses in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred." *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), at paragraph three of the syllabus.

{¶15} This court does not weigh the evidence in reviewing a decision on a motion for a new trial. *Collins* at *id.*, citing *Mannion v. Sandel*, 91 Ohio St.3d 318, 744 N.E.2d 759 (2001), citing *Rohde*. "'Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court.'" *Antal v. Olde Worlde Prods., Inc.*, 9 Ohio St.3d 144, 459 N.E.2d 223 (1984), quoting *Rohde* at paragraph one of the syllabus; *see also Harris v. Mt. Sinai Med. Ctr.,* 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 35. An abuse of discretion implies that the court's attitude was "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶16}** On appeal, appellants assert that the trial court abused its discretion because (1) the trial court failed to consider the proper standard of review; (2) the trial court's decision is contradicted by the record; and (3) the court's reliance on *Gable v. Mansfield Gen. Hosp.*, 5th Dist. Richland No. 95 CA 10, 1995 Ohio App. LEXIS 6102 (Dec. 18, 1995), is misplaced.

## II. The Proper Standard of Review

**{¶17}** Appellants contend that the trial court failed to consider the proper standard of review when it found that the jury verdict was against the manifest weight of the evidence. Appellants contend the proper standard the trial court should have applied is the one articulated in this court's decision in *Meluch v. O'Brien*, 8th Dist. Cuyahoga No. 93296, 2010-Ohio-3301, where this court stated that "a new trial will not be granted where the verdict is supported by competent, substantial, and apparently credible evidence. The court does not undertake to judge the credibility of the evidence, but only judge whether it has the semblance of credibility." *Id.* at ¶ 18, citing *Gwen v. Regional Transit Auth.*, 8th Dist. Cuyahoga No. 82920, 2004-Ohio-628. Appellants contend that the trial court used a higher standard than what is required in this district.

**{¶18}** The standard cited by the trial court is one this court has repeatedly relied upon. The trial court stated:

Under Civ.R. 59(A)(6), a trial court may grant a new trial when a judgment is not supported by the weight of the evidence. In granting a new trial for this reason, a trial court must weigh the evidence and pass upon the credibility of the witnesses, "not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." *Rohde*, 23 Ohio St.2d 82, 262

N.E.2d 685, paragraph three of the syllabus. As stated above, the trial court may not set aside the jury's verdict under Civ.R. 59(A)(6) due to a "mere difference of opinion." *Id.* at 92. "[R]ather, the relief should be granted only when the trial court is persuaded that there is insufficient credible evidence to sustain the verdict in light of the other evidence presented." *Green v. Bailey*, 1st Dist. No. C-070221, 2008-Ohio-3569, ¶ 13.

**{¶19}** The trial court relied on and cited verbatim this court's decision in *Wolf v. Interstate Wrecker Serv.*, 8th Dist. Cuyahoga No. 97144, 2012-Ohio-1744, ¶ 21, which cites to the relevant and controlling Ohio Supreme Court case of *Rohde*, 23 Ohio St.3d 82, 262 N.E.2d 685, paragraph three of the syllabus. Although in *Wolf* this court also cited to the First District case of *Green*, the rule of law cited in *Green* originates from the other controlling Ohio Supreme Court case regarding motions for new trial, *Poske v. Mergle*, 169 Ohio St. 70, 157 N.E.2d 344 (1959), paragraph one of the syllabus, which states, in part:

> where the trial court after its review of the evidence on a motion for a new trial is convinced that there is insufficient credible evidence to sustain a judgment upon the verdict of the jury, such court may, in its discretion, grant not more than one new trial for that reason.

*Id.*; *see also Rohde* at 92. Accordingly, the trial court considered the proper standard of review in deciding appellees' Civ.R. 59(A)(6) motion for a new trial.

## III. Trial Court's Decision Not Contradicted by the Record

**{¶20}** If the trial court's stated rationale for granting a new trial under Civ.R. 59(A)(6) is contradicted by the record, such a decision implies an attitude that is unreasonable and must be reversed. *Wolf*, 8th Dist. Cuyahoga No. 97144, 2012-Ohio-1744.

{¶21} Appellants contend that the trial court's decision is contradicted by the record because the trial court adopted a "blanket rule" when it stated "the standard of care for a radiologist requires that the radiologist provide a reasonable interpretation of the study before him and recognize and report abnormal changes or findings." According to appellants, this standard did not take into account either Dr. Kanal or Dr. Bruno's testimony that radiologists exercise a degree of discretion when reporting their findings.

{¶22} Dr. Kanal testified about this degree of discretion when he testified that the April 2013 study indicated a change from the prior study that was "abnormal," but that it was "perfectly acceptable" to report that same study as stable. (Tr. 493.) Dr. Kanal testified that "sufficiently subtle" changes in an MRI may not warrant reporting, which would still be within the acceptable standard of care. Dr. Bruno agreed with Dr. Kanal, but termed this discretion as "action threshold" — "where things you're seeing on the scan warrant initiating that cascade of events." (Tr. 1078.) Dr. Bruno testified that Dr. Koehl made a "judgment call" on whether the July 2013 Study showed a significant difference from the previous April 2013 Study. And according to Dr. Bruno, Dr. Koehl's report that the study was "stable" was within the standard of care.

{¶23} Contrary to the appellants' assertions, the trial court did not discount the discretion involved in radiological review. The trial court stated that Dr. Koehl "never once testified that he detected any change in the July 2013 study. * * * Dr. Koehl did not offer any testimony to the effect that he interpreted a change but determined that it was not significant enough to report." Specifically, the trial court noted that Dr. Koehl did not testify that he recognized a subtle change but made a "judgment call" not to act upon it. Accordingly, the trial court's decision acknowledged that discretion is utilized, but in this case, the trial court found that the manifest

weight of the evidence did not show that Dr. Koehl used his discretion when making his report on the July 2013 Study.

**IV.  Trial Court's Reliance on *Gable v. Mansfield***

**{¶24}** Appellants first contend that the trial court's reliance on *Gable v. Mansfield*, 5th Dist. Richland No. 95 CA 10, 1995 Ohio App. LEXIS 6102 (Dec. 18, 1995), is misplaced because the standard of care was different in *Gable*, and *Gable* has not been cited as authority by any other court.

**{¶25}** In *Gable*, the defendant radiologist, Dr. Bruehrer, read a CT scan and interpreted it as normal despite the presence of an aneurysm.  During the trial, the defense's expert provided an opinion that Dr. Bruehrer did not deviate from the standard of care because the radiologist had made a "judgment call."  However, he also testified that he would have reported the abnormality and insisted that his medical students would have reported the abnormality as well.

**{¶26}** In granting a new trial for the plaintiffs, the *Gable* court held that the defense expert's testimony was incredible because his testimony regarding detection and reporting conflicted with his opinion that Dr. Bruehrer did not deviate from the standard of care when his report omitted the presence of the aneurysm.  The court held:

> Although [the expert] defended his opinion by stating that he easily could have missed detecting the abnormalities and the decision whether to report such subtle abnormalities constitutes "a judgment call," the fact that (1) every single one of the experts at trial detected the abnormalities, (2) both [plaintiff's expert and defense expert] testified that they would have reported said abnormalities, and (3) [defense expert] would have insisted his medical students report them, demonstrates the incredibility of [the defense] expert's opinion.

*Id*. at 9.

**{¶27}** Appellants contend that *Gable* is not applicable because the standard of care in *Gable* was absolute — the radiologist was responsible for interpreting all findings on the films

— whereas, in this case, evidence was presented that the standard of care allowed for discretion. This is a distinction without a difference; and the fact that *Gable* has not been cited by any other court is irrelevant.

**{¶28}** In this case, the trial court relied on *Gable* for the reasoning that where both competing experts testify that they detected changes in the MRI images, and both stated they would have reported the change, it is incredible for the defense expert to then testify that Dr. Koehl did not breach his standard of care by not detecting the change, and more importantly, not reporting the change. As Dr. Bruno admitted, he would have noted the change, but then explained in the report why no further action was needed. Dr. Bruno contradicted himself again by stating that "the radiologist has to take in all the uncertainty and distill that for the doctor so the doctor can make a decision of whether or not to initiate treatment." (Tr. 1087.) The trial court's reliance in *Gable* was not an abuse of discretion.

**{¶29}** Appellants also challenge the trial court's decision drawing a parallel to *Gable* when it determined that Dr. Bruno testified that he would have reported the change in the July 2013 Study, and Dr. Koehl admitted he did not appreciate any change in the July 2013 study.

**{¶30}** Appellants contend on appeal that Dr. Bruno did not testify as unequivocally as the trial court suggested. Dr. Bruno testified that he "would like to think that [he] would have discussed [the signal change] and explained why [he] thought it [did not] merit additional action." (Tr. 1117-1118.) Moreover, he stated that even if there were a change, it was not significant enough to cross the action threshold and result in a breach of standard of care. (Tr. 1118.)

**{¶31}** However, the trial court found that Dr. Bruno's testimony contained contradictions and did not match Dr. Koehl's testimony or actions in the case. Specifically, the trial court

found that while Dr. Bruno noticed changes in the July 2013 Study that he would have reported, Dr. Bruno opined that Dr. Koehl did not err in not reporting these changes based on the "action threshold" or use of judgment that radiologists exercise when reviewing the studies. But as the trial court found, the problem with Dr. Bruno's testimony about the use of judgment was that Dr. Koehl did not testify he made a judgment call. His report findings and impressions revealed there were "no appreciable changes," and he testified that he did not "appreciate a significant change." (Tr. 1158.)

{¶32} Appellants further contend that *Gable* is not applicable because Dr. Koehl testified that he "[did not] think there was a significant change" in the July 2013 Study. (Tr. 1158.) Appellants contend that the trial court misinterpreted this testimony to mean that Dr. Koehl "did not appreciate *any* change." However, the trial court's interpretation was supported by the record. Dr. Koehl testified that if he "appreciated a change that was actionable," he would have contacted the treating physician. (Tr. 1149.) However, Dr. Koehl subsequently testified that his "duty was to see any abnormal findings on the study." (Tr. 1155.) Simply put, Dr. Koehl did not detect the change that both Drs. Kanal and Bruno found significant enough to warrant reporting if they had viewed the July 2013 Study.

{¶33} We find that *Gable* is not directly on point, but instructive. The trial court did not abuse its discretion in relying on *Gable* and drawing parallels between it and this case to support its decision that the jury verdict was against the manifest weight of the evidence.

{¶34} Based on the inconsistencies in Dr. Bruno's testimony relating to Dr. Koehl's own testimony, we find that the trial court acted within its discretion in finding there was insufficient credible evidence supporting the jury's decision that Dr. Koehl met the standard of care when he did not detect the change "as appreciable" in the July 2013 Study.

{¶35} Refraining from weighing the evidence, and viewing the evidence in a light favor to the trial court's ruling, we conclude that the trial court did not abuse its discretion in granting appellees' motion for a new trial. The trial court's decision is not sufficiently contradicted by the record to render its decision unreasonable, arbitrary, or unconscionable. Accordingly, the assignment of error is overruled.

{¶36} Judgment affirmed and the case is remanded for further proceedings.

It is ordered that appellees recover from appellants the costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

PATRICIA ANN BLACKMON, P.J., and
EILEEN A. GALLAGHER, J., CONCUR